Good morning. May it please the Court, Harry Graver for Petitioner. I'd like to reserve two minutes for rebuttal. I know that the briefing catalogs a lot of mistakes with the decisions below, so I thought what would be most helpful is just to flag at the start what I think are the clean legal errors that punctuate each element of both claims and that together warrant a straightforward remand at which point the BIA can fix the other mistakes I think plagued its decision. So starting with the withholding claim, a withholding claim has two elements, two basic elements. You need a nexus, you need a protected ground. As for nexus, the BIA simply applied the wrong standard. They viewed this case through the wrong lens. Even the government agrees about that. It doesn't get much better when you look at the protected grounds. The protected grounds we offered two. The BIA simply missed one, forgot to mention one of them. And then with respect to the other, it cast it aside in sort of an ipsy-dixit sentence bereft of analysis. When you say the BIA, you're not talking about the BIA in 2022, you're talking about the BIA in 2016? On the withholding claim, correct. So could you speak a little bit about exhaustion? Because if I'm not mistaken, the immigration judge, Burke, did reincorporate the denial of the withholding claim. Correct. But then your client didn't file a brief to the BIA, so the BIA that we're reviewing has no ruling whatsoever on withholding. No, I don't think that's correct. I think that it relates to the scope of the remand. So what happened is that the BIA had already ruled with respect to the withholding claim. Because of the zipper clause inherent in the INA, that couldn't get up to this Court until everything's dealt with below. The scope of the remand is the IJ made plain, related to the merits of the CAT claim. All right. So what the IJ did formally is it assessed the CAT claim, affirmed on both scores, and then what the BIA did is affirm the order below in full. It says the order of the appeal is dismissed. That dealt with everything. So that's the formal disposition of the case. They didn't repeat, they didn't reinvent the wheel with respect to the analysis they already conducted as to withholding, because that wasn't part of the remand from this Court. But then everything comes up under the zipper clause as one fell swoop altogether. And did your client make the categorical bar legal argument to the initial BIA? Was that the argument seeking to reverse the initial denial of withholding? So what we did is appealed the most recent BIA. No, I know. But you understand my question. You have the immigration judge, Clemente, who makes the ruling that you claim has that inherent original error. Was the appeal to the BIA, did the — was the argument made there that you're making now, that there was an error in terms of relying on Ninth Circuit law and saying categorically there could be no PSG here? Right. So the general argument was made that the analysis below is incorrect. Okay. And as we flagged in that case in the reply, I think under this Circuit's law, presenting that general argument puts the BIA on notice as respect to all of the errors inherent below. Okay. Thank you. So those are the issues, though, with respect to the withholding claim. If I can just flag the main mistakes with respect to the CAT claim, too, there, too, there's two basic elements. You know, likelihood of future torture, and you need acquiescence. For each of those, we have basic legal mistakes. As for the likelihood of future torture, the agency below never properly conducted — never properly conducted the aggregate harm analysis that is the bedrock of this problem. Nobody did it. And then as for acquiescence — On the aggregate issue, though, if the I.J. determined that there is zero likelihood of future torture, then can't we read that to include essentially that they did consider that — the I.J. did consider the aggregate? I mean, the aggregate of zero is zero. Right. So I think that that's not what the I.J. found. That's not how I'd read the opinion. If you read the topic sentences when they're relating to each part, you know, the gang on one hand, the government on the other, it's saying that on each instance, independently, the likelihood is not sufficient. It hasn't cleared the 51% threshold. And in those instances when there's something on both sides of the ledger — and this is exactly what the court did in Cole, where the agency forgets to combine the two. I'm not aware of any case from this court doing the work for the agency in the first instance. And in this instance here, there's evidence on both sides of the ledger. It's not zero on one side. There's evidence on both sides of the ledger from the gang and also a bit from the police. And that careful calibration, whether the two of them clear 51%, is exactly the sort of fact-specific analysis that we trust an expert agency to make in the first instance. So I would do here exactly what this court did in Cole. And then just on the acquiescence piece to round it out, I think what the agency did below is twofold, an error twofold. One is that it applied too narrow a definition of acquiescence, too narrow an understanding of acquiescence, and then ignored virtually all of the record evidence regarding local conditions. Those two are just clear legal errors that warrants a straightforward remand with respect to the CAT claim. I'm happy to talk about each piece in particular or anything that the court has attention to, but the one point I wanted to also flag at the start is that for all the procedural mistakes, for all the administrative law errors, the stakes here are incredibly high. Jose's newborn daughter is here, his entire extended family is here, and he is certain — he is certain — he will be killed if he is sent back to El Salvador. What the immigration laws demand is that before the federal government sends somebody to that fate, they provide a reasoned decision as to why. And that is what we're — When you just assert that he's certain he'll be killed, how many times has he already interveningly been sent back by the United States and illegally reentered? Twice. And suffered no police or government public official harassment then? I mean, it hasn't been a daisy walk. Since he's been 13 years old, the gang has had this unrelenting pursuit of him. They've accosted him 50 times. They've beaten him 10 times. They tried to kill him three separate times. When you say unrelenting, I felt that the I.J. discredited the cousin's statement and the friend's statement and said that that was an unproven hearsay. It's not a necessarily unproven hearsay. I don't think he discredited it. I think what's important is that no time was earned adverse credibility finding. It's correct that the I.J. said it was hearsay, but I find that a little bit troubling. Just to be clear here, we have a sworn affidavit from Jose. He also accompanies that story with a death certificate. So this is backed up. But the point here is that the record evidence uniformly points in one direction. So even if the more recent developments, you cast aside a bit, this is year after year after year. There's nothing on the other side of the ledger where the gang has had this unrelenting interest in him since he's been a teenager. Well, the recent activity, isn't that relevant here? I mean, country, if you read the reports, indicate things are changing. So recent activity is important just for the respect to the gang's intensity. I think that the scope and intensity of their interest has grown. It's extended to his family as well as him. The point on the country reports I think is very important in that the key error I think what happened below is even if you put aside the staleness point, I think that's as positive on its own for what the Second Circuit said to Yang with this court endorsed in Parada. But even putting that to the side, the key problem with the analysis below with respect to the country reports and acquiescence is that the agency exclusively looked at the federal level. What they said is the feds are doing their best. They're trying to get rid of the gangs. They're trying to get rid of corruptions. And that was the end of the analysis. But that is the exact mistake this court corrected in Parada. In Parada, what this court said is that acquiescence is a problem if there's acquiescence at any level of government. If local officials, I'm sorry. I do, and I'm sure you want to reserve time, but I had one other question, and he's very fortunate to have you as counsel, so I'm going to assume you know the record as intensely as I expect you do. On page 7, page 7 of that original I.J. ruling, what, 7 years, maybe more now, 10 years ago. Is this the oral ruling? No, the I.J.'s written ruling. I'm back on the withholding claim. Oh, okay. The I.J., it is a bit of a meandering opinion, but at the end he does return to here's my oral summary. I don't think either of these elements are proven. Protected social groups, social distinctiveness, or a nexus, even if there were a group. Is that not a fact-finding as opposed to just purely looking at Ninth Circuit law? I don't think so. I think that the, there's two pieces of it, if I can disentangle it and then we'll reserve the rest of my time. With respect to the particular social group, the analysis is exclusively legal error. With the I.J., the only thing the I.J. does in this point is looks to cases this Court has said with respect to similar groups and has said, well, the Ninth Circuit's ruled that out. That's all they do. There's no specific fact-finding there. That's a clear error because under this Court's cases, you still need to perform a case-by-case analysis. Just because this Court said this group doesn't count in 2004 doesn't make it true in 2024, doesn't make it true in 2044. It's not a point for time immemorial. You still need to look at the evidence before you. And then there's point two, which is the particular social group that we proffered is distinct from the generalized gang opposition. It's those that directly rebuffed the gang's instructions. And this Court has emphasized that subtle distinctions in a group can still make all the difference and you need to engage with the record before you. On the randomness point, just as the last piece of this, on the randomness point, say what you will about the rest of this case, that strikes me as the most unjustifiable piece of this. And it reflects the kind of blinkered analysis. Again, as I was touching on before, here's what the record evidence shows. It shows he's been targeted since he's 13, accosted for 50 times, beaten 10 times, shot at three times. They went after his family. They started calling him personally to threaten him with death. And this has continued year after year. Counsel, what I'm going to do is I'm going to reserve two minutes additional time. And so why don't you have a seat and then we'll let the government go. Thank you, Your Honor. All right. Thank you.  Good morning, counsel. Good morning. Taryn Arbeiter on behalf of the respondent may it please the court. Petitioners claim in this case that he was retaliated against by a gang for refusing to join them and that he had two unrelated encounters with police, simply not a situation for which our immigration laws allow relief. In addition, he had the burden of proof and persuasion in this case and he simply didn't meet that burden. Let me ask you this as an initial just clarification. I guess I want to know what the government's position is. What is before us? Is it the second order that's before us? What's before us? Yes. Our position, Your Honor, is that the initial order of the board was a non-final order. At the point that this case was remanded, that became a non-final order. And so we do agree with the Petitioner that the withholding claim is before the court. Okay. Both the 2016 and the 2022 BIA orders? Yes, Your Honor. Okay. Is it necessary on that point that the BIA said we deny in full and that I.J. Burke said I'm resolving both issues on remand? In other words, if the I.J. had not reiterated and reincorporated the initial withholding, or would it still have sort of five years later still existed out there in the ether? Your Honor, you know, I'm not certain, but in this case, it doesn't matter. But I would, you know, because it is now in a non-final order, it's just part of the record in this case. And so we're willing to, we're willing to talk about this today. So turning to the first issue, Mr. Martinez gave the agency no evidence at all to support that his proposed particular social group was socially distinct. But didn't the I.J. fail to make any individualized findings about the PSG and the social distinction? So as Judge Higginson observed on page seven of that initial I.J. decision, I.J. did say that, did make a finding on both particular social group and on nexus, and found that, you know, his particular social group was not supported in the record. And indeed, that's true. Didn't parse down any of the three elements. That is true, Your Honor. That says not proven.  Is that, does that, is that sufficient under Ninth Circuit law? In our view, yes. It would have been different if the petitioner had offered some sort of evidence about, you know, particularity or about social distinction. But when you, sorry to interrupt, but when you say in our view, do you have a Ninth Circuit case that says this is enough, you don't need to subdivide into the three elements? I don't necessarily have a case saying that. But, you know, common sense would say that the I.J. can make findings on evidence that exists in the record, and there just simply was none in the record supporting that this particular social group was socially distinct. And we know that petitioners in these published cases have provided far more, you know, perhaps expert testimony, country conditions reports, showing, you know, going to the social distinction of these groups. And so, not only was the petitioner required to show some evidence, he was required to show more than what these petitioners in these other cases have shown. And that simply wasn't the case here. There's no indication. In the petitioner's brief, the petitioner argues that the gang viewed him as part of a socially distinct group, and that's simply not the correct analysis. We need to know whether the society views that. I think Ninth Circuit law is that if you resist a gang enough that you testify against them or maybe politically protest against them, that would qualify. And so, isn't it the obligation of the I.J. to sort of parse, or is the government's position here, any time a male resists gang recruitment, that's the end of the story, because there is no PSG, regardless of fact inquiry? Your Honor, the burden here is high, and the burden of proof and persuasion is on the petitioner. And so, he was required to show — I don't think you're answering the question that Judge Higginson's asking, though, which is, is it your position that you never have to make — that I.J. never has to make an individualized finding with respect to the social distinctiveness when the claim is that the PSG is resisting gangs? Yeah, that is my question. Yeah, in general — thank you, Your Honor. I would say in general that the immigration judge does, and, you know, certainly we prefer that that was the case here. However, there just wasn't anything for the immigration judge to find. And so — Just to interrupt, that sounds more like a harmlessness argument. In other words, it was error, but you're saying there's nothing that could change. We have the full record. It's been a seven-year-long record. We had the remand record, and we can look at that. Is the government making that argument a futility, and if so, is there Ninth Circuit law that supports that? Well, Your Honor, that would be, you know, a possible argument for us to make, but — Oh, don't say possible. Have you made it? Have you made it, and do you know of law that supports that? That's not — that's not exactly the argument I'm making. Okay, thank you. What I'm trying to say is that, you know, in this case, where there is no evidence whatsoever about social distinction, the immigration judge simply couldn't make a finding regarding that. And so, observing that, you know, under common sense, that if all these other claims have been denied with actual evidence showing social distinction, you know, the possibility of social distinction, certainly when you show no evidence, you have not met your burden. And I would like to jump now to, you know, the claim that — the Catt claim. In this case, the petitioner also held the high burden of persuasion in this case to show that the specifics of what he suffered amounted to torture and was — that public officials turned a willfully blind eye to his mistreatment, and he simply has not shown that evidence here. According to his own country reports, the government has declared a war on gangs. And in addition, even in his own case, he took this to the prosecutor twice, and they said that they were investigating the issue. And so, he has not shown government acquiescence to his fear of torture. And unless there's further questions, I will see the rest of my time. Thank you. Are there any other questions? No, thank you. All right, thank you. Thank you, Your Honors. Just two points quickly on rebuttal. The first is that the government's key mistake is — in all of its discussions, it burdens, things like that. This is not a substantial evidence case. There's procedural defect after procedural defect. This is a reasoned decision-making case. It's different in kind. Number two, there's discussion about a particular social group, and I think that is just emblematic of the flawed reasoning below. Judge Higginson, you asked, you know, is there examples of, you know, botching the three-part test? There is. Judge Desai joined the case. Delegate Leon Gomez recently, where the agency made the same exact mistake with respect to a very similar group. It's those that witnessed gang murders. This Court sent it back. The same disposition is appropriate here. There's also the question, too, Judge Higginson, is there any Ninth Circuit law that supports, you know, this harmlessness idea? Zero. What this Court said in Cole is that when you have a big legal mistake like this, you miss an argument, you botch the standard, as long as there is some evidence in the record, it's not harmlessness. And the government is completely wrong that there is no evidence here to support the particular social group. I want to point the Court to three pieces of the record. One is Petitioner's own experience. As he explained, the gang never forgets those that directly rebuff its instructions, and they were true to its word year after year after year. The second part is that similarly situated people had the same experience. Petitioner flagged an example of a cousin of a local gang member who rebuffed the gang's orders, received violence, ultimately was killed. What this Court has said is a hallmark of a particular social group is if you are subject to higher incidents of violence. That hallmark is present here. And the last part is that Petitioner's stigma extended over to his family. They start going after his cousins, shooting at one, killing another, forcing a third to  So before your time rubs, assume all three facts in your favor. What's the Ninth Circuit case that would accept that as a cognizable and protectable PSG? So I would look to, I think you flagged it before, with Henriquez-Rivas. And that's the key point, is that I think what the Court That's the en banc decision. Correct. There I thought the Court said no. Henriquez-Rivas was a remand with respect to the witnesses, and they endorsed that idea.  But you have any Ninth Circuit case that's ever on extreme violence, similar victims, family targeted, still recognize gang recruitment as a socially, those victims as a socially distinct group? In other words, isn't that the Achilles heel here, that there is no social group here? So I think that's the key point, is that I don't think this Court has addressed that instance head on. But what the Court explained in Henriquez-Rivas is that we're not just saying this kind of amorphous gang opposition, something like that. If you look at the Court's analysis there, essentially it created a spectrum. So you have this amorphous, vague opposition on one hand, and then you have something more concrete on the other. Did you witness the gang murders? Did you testify against somebody? And then there's a chasm in between. What does your conduct in relation to the gang do with respect to how your fellow citizens see you? And we're somewhere in between. We have somebody who's directly rebuffed the gang, rebuffed their instructions, turned down the request to commit crimes. That is the exact kind of fact-intensive analysis that we trust the agency to do in the first instance. So Judge Higgins, I don't have an immediate example. But if I could just ask one clarification. When you say witness or testify, my memory is it's those two are one category under Ninth Circuit law. It is you have to be a witness who did testify. Am I right? And if so, we know factually that didn't happen here. So in Henriquez-Rivas, it was testifying. Yes. But in De Leon Gomez, it was just a witness to a gang murder. You just saw a murder. And that created a stigma with you in society. So it did not involve testimony. Okay. Interesting. But this is, I think, just the key point, is that what this Court has emphasized across its cases is a fact-specific inquiry. And small distinctions can make all the difference about how your fellow citizens see you. At minimum, under Cole, there is some evidence in the record. That analysis was never performed below. And again and again and again, this Court has remanded on those circumstances. The same is true here. Let me see if there are any other questions. All right. Thank you, Counsel. Thank you, Your Honor. This matter will stand as submitted. Ayala v. Garland.
judges: Higginson, MENDOZA, DESAI